UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 07-378-JBC

GERALD YOUNG,                                                                                PETITIONER,

V.                         MEMORANDUM OPINION AND ORDER

THOMAS L. SIMPSON, WARDEN,                                                      RESPONDENT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the petitioner's application for a writ of habeas corpus (R. 1) and cross-motion for summary judgment (R. 18), and on the respondent's motion to dismiss or, alternatively, for summary judgment (R. 9, 10). The court referred this matter to the Honorable James B. Todd, Magistrate Judge for the United States District Court for the Eastern District of Kentucky, who issued a Report and Recommendation (R. 20). The petitioner has filed an objection to a portion of the Magistrate Judge's report. When the parties to an action submit such objections, the district court reviews the record *de novo*. 28 U.S.C. §636(b)(1)(c). To the extent that the petitioner does not specifically object to the report and recommendation, the court concurs in the results recommended by the Magistrate Judge. *Thomas v. Arn,* 474 U.S. 140 (1985). The court, having reviewed the record *de novo* in light of the objections and being otherwise sufficiently advised, will accept the Magistrate Judge's Report and Recommendation and will dismiss the petition for a writ of habeas corpus.

I.      **Background**

On June 13, 1997, Osama Shalash was killed outside a Lexington, Kentucky restaurant. A Fayette County Grand Jury indicted Gerald Young, Erskin Thomas, and Darrell Morbley for the murder. Following a 10-day jury trial n June 1998, Young was convicted of complicity to murder and sentenced to death. The Kentucky Supreme Court summarized the case as follows:

> At trial the Commonwealth proved that Shalash and Young were cocaine traffickers and that Young regularly purchased large quantities of cocaine from Shalash for resale to lesser dealers. There was evidence that Young intended to purchase $50,000.00 worth of cocaine from Shalash, but that Shalash only had $25,000.00 worth of cocaine to sell. Young paid Shalash $25,000.00 for the cocaine and entrusted the remaining $25,000.00 to one of Young's associates, Leslie Mulligan. There was evidence that Young had previously "shorted" Shalash on another drug transaction. The Commonwealth's theory of the case was that Shalash robbed Mulligan of the $25,000.00 at gunpoint; and, in revenge, Young hired Thomas to kill Shalash. To that end, Young arranged a meeting with Shalash at the Lexington Mall parking lot. Morbley, another of Young's associates, drove Thomas to and from the Lexington Mall where Thomas shot and killed Shalash.

*Young v. Commonwealth*, 50 S.W.3d 148, 155 (Ky. 2001). The Kentucky Supreme Court affirmed Young's conviction but reversed the death sentence and remanded for a new sentencing hearing. *Id.* On remand, Young received a sentence of life imprisonment that was affirmed by the Kentucky Supreme Court on direct appeal. *Young v. Commonwealth*, 129 S.W.3d 343 (Ky. 2004).

Young filed a motion to vacate and set aside the judgment pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42, which was denied by the Fayette Circuit Court. On appeal, the Kentucky Court of Appeals held that Young's

2

trial counsel's failure to object to the trial court's improper allocation of peremptory challenges constituted ineffective assistance of counsel per se. The Kentucky Supreme Court granted discretionary review and concluded that the Court of Appeals had erred, and held that Young had failed to make a proper showing of prejudice. The Supreme Court reversed the Court of Appeals' decision and reinstated the Fayette Circuit Court's order denying post-conviction relief. *Commonwealth v. Young*, 212 S.W.3d 117 (Ky. 2006). Young then filed the instant habeas petition.

II.     **Standard of Review**

Review of a petition for habeas corpus is governed by the Anti-terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §2241 *et seq*. ("AEDPA"). The AEDPA imposes the following standard of review that a federal court must utilize when reviewing an application for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. §2254(d). Under the "contrary to" clause of the statute, a federal court may grant relief if the state courts, in affirming the conviction, arrived at a

conclusion opposite to that reached by the United States Supreme Court on a question of federal constitutional law or the state court decided the prisoner's case differently than the United States Supreme Court decided the same constitutional question on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause of the statute, relief is warranted if the state courts in affirming the conviction identify the correct governing principle of constitutional law from decisions of the United States Supreme Court but unreasonably apply that principle to the facts in the case. *Id.* at 407-08; *Campbell v. Coyle*, 260 F.3d 531 (6th Cir. 2001). The key question in an "unreasonable application" analysis is whether the state-court decision was objectively unreasonable, not whether it was merely erroneous or incorrect. *Williams*, 529 U.S. at 409. Overall, the "state-court judgment must be upheld unless, after the closest examination of [that] judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Id.* at 388. Further, "findings of fact made by a state court are presumed correct and can be contravened only where the habeas petitioner shows by clear and convincing evidence that the state court's factual findings were erroneous." *Bugh v. Mitchell,* 329 F.3d 496, 500 (2003); 28 U.S.C. § 2254(e)(1).

### III.    Petitioner's Claims

The petitioner objected to the Magistrate Judge's recommendations on the first two claims of his petition but did not object as to the remaining claims. Thus, the court will adopt the report and recommendations regarding claims three through

seven, but will review the record *de novo* for claims one and two: whether the Kentucky Supreme Court applied too narrow a standard and whether the petitioner should have been allowed to present additional evidence at his resentencing hearing.

> **A. Whether the Supreme Court of Kentucky's Denial of Young's Ineffective Assistance of Counsel Claim was Based on an Unreasonable and Impermissibly Narrow Application of *Strickland v. Washington***

The petitioner states that the Supreme Court of Kentucky correctly identified *Strickland* as the legal rule governing whether Young's counsel was constitutionally ineffective for failing to preserve an error based on an incorrect allocation of peremptory challenges by the trial court. However, the petitioner argues that the Supreme Court then applied the rule in an unreasonable manner.

When a convicted defendant alleges that he was deprived of his Sixth Amendment right to counsel, he must show that his "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In addition, "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687.

> 1. Deficient performance

The petitioner alleges that his counsel's failure to object at trial to an improper allocation of peremptory challenges was an act or omission that was not the result of reasonable professional judgment. The court must determine "whether, in light of all the circumstances, the identified acts or omissions were

5

outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The court views the attorney's actions as of the time of the conduct and within the facts of the particular case. *Id.*

The proper number of peremptory challenges for the defense during Young's trial, in which he was tried with two co-defendants, was fifteen, according to the Kentucky Supreme Court. *Young*, 50 S.W.3d at 163. However, the trial court granted the defense only fourteen peremptory challenges and the defense did not object.[1] The trial court's error was not preserved for appellate review because of the lack of an objection. *See* Kentucky Rules of Criminal Procedure 9.36(3) ("All challenges must be made before the jury is sworn.").

Even if the lack of objection was professionally unreasonable, the omission did not constitute ineffective assistance under the Constitution unless the deficiency was prejudicial to the defense to the extent that it affected the outcome. *Strickland*, 466 U.S. at 691-92. Thus, the court will turn to the question of whether the attorney's inaction prejudiced the outcome of the trial.

2. Prejudice

Prejudice is defined as "a reasonable probability that, but for counsel's

---

[1] The trial judge granted three peremptory challenges to the three co-defendants as individuals, as required by RCr 9.40(3), but failed to give the additional peremptory strike granted to the defense as a "side." RCr 9.40(2); *see Springer v. Commonwealth*, 998 S.W.2d 439 (Ky. 1999) (explaining the rule and clarifying the calculation for determining the correct number of peremptory challenges).

6

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant must show "that the decision reached would reasonably likely have been different absent the errors." *Id.* at 697. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

The petitioner alleges that a different outcome was a virtual certainty if defense counsel had contemporaneously objected to the improper allocation of peremptory challenges. He asserts that such an objection would have caused the conviction to be reversed on direct appeal and a new trial ordered. This is different, according to the petitioner, from the outcome without such an objection – where the error goes unreviewed and the conviction is affirmed.[2]

However, the test is not whether the outcome would have been different on appeal, but whether the outcome at trial was affected. "When a defendant

---

[2] On the defendant's collateral attack in state court, the Kentucky Court of Appeals found that Young's counsel's failure to object was deficient performance and that it equated to prejudice per se because the under-allocation would have entitled Young to a new trial on appeal if an objection had been lodged and not corrected. The Kentucky Supreme Court reversed the court of appeals, holding that prejudice was not automatic based on the failure to object to the allocation of peremptory challenges and that Young was accordingly not entitled to a presumption of prejudice. *Young*, 212 S.W.3d at 117. The court further held that Young did not identify any prejudice that effected his trial, and affirmed the trial court's judgment. *Id.*

challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

The petitioner must show how the error had an effect on the result of the trial. The trial court was not given the opportunity, through an objection, to correct its improper under-allocation. The petitioner has not shown how the outcome would have differed had the error been corrected at trial and the defense received one more peremptory challenge. The petitioner has not alleged a reasonable probability of a different result at trial if his counsel had objected to the allocation of challenges.

*Roe v. Flores-Ortega,* cited by the petitioner, does not persuade the court that the petitioner has suffered prejudice. 528 U.S. 470 (2000). In *Roe*, defense counsel failed to file a notice of appeal. The attorney's deficient performance led to the forfeiture of an entire judicial proceeding, prompting the United States Supreme Court to find that such a loss constituted ineffective assistance of counsel. Here, the petitioner's loss was hardly of such magnitude. The case does not support his position.

The petitioner has not shown the requisite prejudice under the *Strickland* factors. Thus, the Kentucky Supreme Court did not invoke an unreasonable application of federal law in determining that Young did not have an ineffective assistance of counsel claim under the Constitution.

    B.    **Whether the Petitioner was Denied His Constitutional Right to Present**

**Relevant Mitigation Evidence During His Resentencing**

Following reversal of his death sentence by the Supreme Court of Kentucky, Young was resentenced to life imprisonment.  *See Young v. Commonwealth*, 50 S.W.3d 148 (Ky. 2001).  During his resentencing hearing, the Commonwealth presented evidence regarding Young's minimum parole eligibility pursuant to Kentucky's truth-in-sentencing statute.  KRS 532.055(2)(a)(1).  Young then sought admission of statistical evidence regarding the likelihood of being recommended for parole by the Parole Board at an initial parole hearing.  The trial court found the evidence inadmissible and the Supreme Court of Kentucky affirmed that ruling.  *Young v. Commonwealth*, 129 S.W.3d 343 (Ky. 2004).

The state courts found that the statistics were not probative as to Young's chances of being paroled.  Specifically, the Kentucky Supreme Court found that the evidence did not predict his actual chances of being paroled and thus was irrelevant and incompetent.  *Young*, 129 S.W.3d at 344-45.[3]  The court found that Young's

---

[3] The opinion of the Supreme Court of Kentucky was a plurality opinion.  In a plurality decision the "holding is confined to the 'position taken by those [m]embers who concurred in the judgments on the narrowest grounds.'" *Callihan v. Commonwealth*, 142 S.W.3d 123, 126 (Ky. 2004) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)).  In Young's case, Justice Johnstone stated in a concurrence that Kentucky law

> should be construed to permit a defendant to present evidence regarding the possibility of parole to rebut the prejudicial effect of the Commonwealth's evidence of minimum parole eligibility.  However, I am not persuaded that the evidence in this case was sufficiently developed to allow its admission.  Thus, I would leave the issue for another day.

*Young*, 129 S.W.3d at 345-46.  The petitioner argues that Justice Johnstone endorsed the view that possibility-of-parole information should be admissible in

parole determination would be made by a different board from the one represented by the statistics and that parole determinations are inherently individualized decisions which are difficult to predict using statistics. *Id.* The evidence Young sought to admit did not qualify as rebuttal, according to the Kentucky Supreme Court. *Id.* at 345.

The petitioner argues that the state court failed to apply federal law which allows a defendant to introduce all relevant mitigating evidence at sentencing. He argues that the evidence was relevant because it demonstrated the likelihood of parole for any inmate based on the Parole Board's past actions, even if it did not directly indicate the date on which Young would be paroled.

A federal habeas court does not reexamine state-court determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). This court does not usually determine "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). The state court's evidentiary ruling was based on the Kentucky Rules of Evidence regarding relevance, which is the same federal standard which the

---

sentencing proceedings and that his view should be considered the holding of the court. However, even Justice Johnstone's concurrence did not allow for the admission of the evidence in Young's case, instead stating that he was not making a decision regarding its admissibility, which effectively affirmed the trial court determination that it was inadmissible. The plurality opinion relied upon Kentucky law, which states that parole eligibility statistics are not admissible mitigating evidence, *see Abbott v. Commonwealth*, 822 S.W.2d 417, 419 (Ky. 1992), and Justice Johnstone's concurrence did not change Kentucky law.

petitioner argues for – the admission of all *relevant* mitigating evidence.  The state courts found that the information was not relevant and that it was not mitigating evidence under Kentucky law.  The exclusion of the statistical evidence did not render the resentencing proceeding so fundamentally unfair as to violate the petitioner's due process rights.  The Kentucky Supreme Court's decision was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

### IV.  Certificate of Appealability

A Certificate of Appealability may be issued where "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a substantial showing is made when it is evident that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The court finds that reasonable jurists would not find debatable or wrong the correctness of the assessments made in this case; therefore, the court declines to issue a certificate of appealability.

### V.  Conclusion

Accordingly,

**IT IS ORDERED** that the Magistrate Judge's Report and Recommendation (R. 20) is **ADOPTED** as this court's opinion with the addition of the analysis set forth above.

**IT IS FURTHER ORDERED** that the petitioner's cross-motion for summary judgment (R. 18) is **DENIED.**

**IT IS FURTHER ORDERED** that the respondent's motion to dismiss or, alternatively, for summary judgment (R. 9, 10) is **GRANTED**.

**IT IS FURTHER ORDERED** that the petitioner's application for a writ of habeas corpus (R. 1) is **DENIED AND DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is **DENIED,** as the petitioner has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(1).

*signature: Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY